ENTERED JAN 3 0 2015

STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-14-1
DOCKET NO. AP-14-2
DOCKET NO. AP-14-3

MMM-KEN-01-20-15

|  |  |  |
|---|---|---|
| DARLING'S HYUNDAI, | ) | |
| | ) | |
| Plaintiff - Appellee, | ) | ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| HYUNDAI MOTOR AMERICA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Defendant/Appellant Hyundai Motor America ("Hyundai") appeals the District Court's small claims opinion in Docket Nos. SC-2013-0287, SC-2013-0289, and SC-2013-0290 (collectively, the Small Claims Judgment) pursuant to M.R. Civ. P. 76D. The Small Claims Judgment held that Darling's was entitled to a 94% markup under 10 M.R.S.A. § 1176 ("section 1176") on remanufactured radio, rear seat entertainment ("RSE"), and Navigation units (collectively, the "remanufactured units") installed under warranties on Hyundai vehicles. Hyundai argues it is not required to pay Darling's the 94% markup because Darling's did not "provide" the remanufactured units under the meaning of section 1176. Darling's argues the District Court properly found Hyundai was required to pay the markup because, from the perspective of the vehicle owner, Hyundai does "provide" the remanufactured units.

For the reasons discussed below, the court denies Hyundai's M.R. Civ. P. 76D appeal.

1

## I.    Background

Darling's is an automobile dealer/franchisee of Hyundai, the manufacturer/franchisor. Darling's is contractually required to perform warranty repairs on Hyundai vehicles at no cost to the customer. Darling's filed four small claims actions in the Augusta District Court in May of 2013 regarding warranty repairs. The District Court ruled in favor of Darling's and Hyundai appealed the judgment on three of the four claims.

In the three claims at issue, Darling's performed repairs on Hyundai vehicles covered by Hyundai's express warranty at no charge to the customers. Pursuant to the parties' agreement, as embodied by the 2013 Hyundai Warranty Policy and Procedure's Manual ("Warranty Manual"), Hyundai reimburses Darling's for labor costs and for the Hyundai parts used in warranty repairs.

Section 5.1 of the Warranty Manual provides that Hyundai will reimburse Darling's for the costs of the parts by paying the dealer net price plus an additional parts handling allowance based on the dealer net price. Hyundai utilizes a 40% markup on the dealer net price as the "parts handling allowance" for nearly all of its dealers in the country. Maine dealers, however, are afforded a different parts handling allowance per Maine law. Specifically, section 1176 requires the manufacturer to reimburse the dealer for any parts provided at "the retail rate customarily charged by that [dealer] for the same parts when not provided in satisfaction of a warranty..." 10 M.R.S.A. § 1176. The "retail rate" is the price that a dealer would "customarily" charge a nonwarranty customer for that same part. *See Darling's v. Ford Motor Co.*, 1998 ME 232, ¶ 18, 719 A.2d 111

2

(hereinafter "*Ford Motor Co. 1998*").[1] Here, the parties stipulated that the "retail rate," or the average percentage markup, to be applied to all parts used by Darling's in warranty repairs is 94%. Accordingly, each time Darling's performs a warranty repair, it receives a reimbursement including both the dealer net price and the 94% markup from Hyundai.

In the three cases at issue, Darling's performed repairs in which the remanufactured units were installed under warranty. The repairs at issue are governed by section 5.6 of the Warranty Manual, which explains that, unlike most other parts, Darling's is not required to keep a supply of new radio, RSE, or navigation units. Instead, Darling's must replace these defective parts with the remanufactured units that are stocked by a parts distribution center. When Darling's orders and receives a remanufactured unit, Hyundai invoices Darling's for the remanufactured dealer net price. After Darling's installs the remanufactured unit, it must mail the defective unit back to Hyundai to receive a credit in an amount equal to the price for which it was invoiced.

The question at issue is whether Section 1176 requires Hyundai to pay the 94% markup in addition to the dealer net price for the remanufactured units.

A. Summary of the Small Claims Judgment

The District Court determined that Hyundai was required to pay Darling's the 94% markup on the remanufactured units. Small Claims Judgment, 2-4. It explained that while Darling's is not permitted to stock new radio, RSE, or navigation systems for warranty repairs, Hyundai does require Darling's to perform those warranty repairs using remanufactured parts. *Id.* at 3. From this, the District Court explained that viewed from

---

[1] Section 1176 offers further details regarding how this rate is determined that are not pertinent to resolving the present dispute.

the vehicle owner's perspective, Darling's has "provided" the remanufactured unit as part of the warranty process. *Id.*

Furthermore, the District Court explained that the Law Court rejected a construction of section 1176 similar to the one proffered by Hyundai in *Ford Motor Co. 1998*. In that case, the manufacturer argued that section 1176 did not cover, and that markup payments were not owed for, "sublet repairs," i.e. repairs that "occur when the dealer must make a repair, but cannot provide the specialized labor or materials required to make the repair." *Id.* (quoting *Ford Motor Co. 1998*, 1998 ME 232, ¶ 20, 219 A.2d 111). The dealer must instead hire a subcontractor to make the repair. *Id.* The Law Court rejected the manufacturer's argument that the dealer was not "providing" the labor or parts involved in the sublet repairs as the term is used in section 1176 explaining:

> We determine that section 1176 includes reimbursement for sublet repairs. The statute governs reimbursement of all repairs in which a manufacturer "requires or permits a motor vehicle franchisee to perform labor or provide parts in satisfaction of a warranty..." 10 M.R.S.A. § 117 (1997). Since section 1176 applies to all warranty repairs, it applies to warranty repairs accepted by dealers who lack the ability to make all repairs on their premises, as well as to the dealers who have the ability to make all repairs on their premises.

*Id.* (quoting *Ford Motor Co. 1998*, 1998 ME 232, ¶ 21, 219 A.2d 111. Accordingly, the District Court held that section 1176 applies to warranty repairs involving Hyundai remanufactured units. Small Claims Judgment, 3.

## II. Discussion

Pursuant to M.R. Civ. P. 76D, Hyundai only appeals questions of law, specifically the District Court's interpretation of section 1176. Section 1176 provides, in pertinent part:

4

If a motor vehicle franchisor <u>requires or permits</u> a motor vehicle franchisee to perform labor <u>or provide parts</u> in satisfaction of a warranty created by the franchisor, the franchisor…<u>shall reimburse</u> the franchisee for <u>any parts so provided</u> at the retail rate customarily charged by that franchisee for the same parts when not provided in satisfaction of a warranty.

10 M.R.S.A. § 1176 (emphasis added).

Issues of statutory interpretation are reviewed de novo. *Ford Motor Co. v. Darling's*, 2014 ME 7, ¶ 15, 86 A.3d 35. The primary purpose in statutory interpretation is to give effect to the intent of the Legislature. *Central Maine Power Co. v. Devereux Marine, Inc.*, 2013 ME 37, ¶ 8, 68 A.3d 1262. Courts examine the plain meaning of statutory language seeking to give effect to the legislature's intent and will construe statutory language to avoid absurd, illogical, or inconsistent results. *Id.* Courts also construe the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved. *Id.* All words in a statute are given meaning, and no words are treated as surplusage if they can be reasonably construed. *Id.* Any findings of fact by the District Court will not be set aside unless clearly erroneous. M.R. Civ. P. 76D.

In support of its appeal, Hyundai raises the following arguments: 1) Section 1176 does not require Hyundai to pay Darling's the 94% markup for the remanufactured units at issue; 2) The Small Claims Judgment's interpretation of section 1176 impermissibly abrogates the parties agreement that Hyundai is the exclusive provider of the remanufactured radios; and 3) The Smalls Claims Judgment's interpretation of section 1176 impermissibly conflicts with other laws.

5

A.   Whether Section 1176 Requires Hyundai to "Reimburse" Darling's for the Remanufactured Units at Issue

Hyundai raises four arguments in support of its position that section 1176 does not require Hyundai to pay Darling's the 94% markup on the remanufactured units. First, Hyundai argues that because the parties agreed Hyundai, not Darling's, would provide all of the remanufactured units to Darling's, the remanufactured units are not within the scope of section 1176. In particular, Hyundai points to section 5.6.1 of the 2013 Warranty Policy, which states that the Hyundai Parts Distribution Center "will stock and ship all remanufactured radio/RSE/Navigation units," that upon shipping the part, Hyundai would "invoice the Dealer at the remanufactured dealer net price," and that "[t]he price of the unit will match the price of the credit processed for the returned inoperative (core) unit." Hyundai further argues that treating the remanufactured units as outside the scope of section 1176 would not have adverse effects because the remanufactured units are a narrow subset the parties agreed to treat differently by contract. Indeed, unlike typical warranty repairs, where a dealer provides parts from its own inventory, section 5.6 states that Darling's is not allowed to stock the remanufactured parts. Instead, Hyundai provides those parts.

Second, Hyundai argues that there is no basis for Darling's claim that it is entitled to "reimbursement" because Hyundai promptly credited Darling's the full amounts for the warranty repair parts. As such, Hyundai argues that if Darling's paid nothing for the parts, there is nothing for Hyundai to reimburse and nothing on which to base a markup.

Third, Hyundai argues that *Ford Motor Co. 1998*, upon which the Small Claims Judgment relied, is inapplicable. Hyundai argues that in *Ford Motor Co. 1998*, it was undisputed that the dealer was permitted to perform labor for the warranty repair at issue,

6

and the only question was whether the dealer was entitled to recover the statutory markup on charges for labor performed by a subcontractor to whom the dealer sublet the repair work. Unlike *Ford Motor Co. 1998*, Darling's was neither required nor permitted to provide the remanufactured units for warranty repairs in this case. In fact, Hyundai argues, the agreement between the parties explicitly provided that Hyundai would provide the warranty repair parts, not Darling's.

Fourth, Hyundai takes issue with the District Court's finding that viewed from the perspective of the vehicle owner, Darling's has "provided" the remanufactured radio unit as part of the warranty repair process. Hyundai argues that the statute does not require that the transaction be viewed from the vehicle owner's perspective. Instead, the question is whether the dealer "provided the parts."

Here, the District Court did not err in determining that section 1176 requires Hyundai to pay Darling's the 94% markup on the remanufactured units. Although section 1176 contains ambiguity regarding the term "provide," the remanufactured units are not sufficiently distinct from "typical" parts that indisputably warrant the 94% markup. As noted, Hyundai attempts to distinguish the remanufactured units from "typical parts," which it agrees Darling's "provides," based on the fact that Darling's is expressly prohibited from stocking the remanufactured units for warranty repair. Warranty Manual, § 5.6.1. As a result, Darling's does not have to set aside warehouse space, maintain an inventory, or otherwise incur overhead costs for the remanufactured units. However, it is undisputed that Darling's orders the remanufactured units in the same manner it orders "typical" parts. In addition, Hyundai ultimately provides all of the parts used by Darling's in warranty repairs pursuant to the parties' agreement. *See*

7

Warranty Manual, 1.0 (A.). Boiled down, the primary distinction between the remanufactured units and "typical" parts is that Darling's does not keep the remanufactured units stocked at its dealerships. This distinction does not warrant different treatment under section 1176.

This interpretation is supported by the Law Court's opinion *Ford Motor Co. 1998*, which adopted a broad construction of section 1176. As discussed above, *Ford Motor Co. 1998* determined that sublet repairs should not be treated differently under section 1176 just because the dealer lacks the ability to make all repairs on their premises. 1998 ME 232, ¶ 21, 219 A.2d 111. While *Ford Motor Co. 1998* did turn in part on the fact that it would treat dealers differently based on their ability to handle different repairs on premises, it also rejected a carve-out to the scope of section 1176 and put forth the broad statement that section 1176 "applies to all warranty repairs[.]" *Id.* Accordingly, *Ford Motor Co. 1998* supports rejecting the distinction Hyundai wishes to draw between remanufactured units and "typical" parts under section 1176.

Furthermore, the legislative intent behind the Business Practices Between Motor Vehicle Manufacturers, Distributors and Dealers Act ("Dealers Act"), under which section 1176 was enacted, provides additional support for the broader interpretation of section 1176 adopted by the Small Claims Judgment. The Legislature enacted the Dealers Act due to a disparity in bargaining power between manufacturers and dealers. *Acadia Motors, Inc. v. Ford Motor Co.*, 844 F.Supp. 819, 827-28 (D. Me. 1994); *aff'd in part, rev'd in part on other grounds*, 44 F.3d 1050 (1st Cir. 1995). In particular, the Legislature wanted to prevent manufacturers, "unwilling to pay the fair and full price for repairs made necessary when their automobiles failed to meet warranty standards," from

8

forcing dealers to shift costs of performing warranty work to nonwarranty customers. *Id.* (quoting Me. L.D. 1878, 109th Leg., 2d Sess. (Statement of Fact). Accordingly, interpreting section 1176 in a broader fashion, to cover the remanufactured units, is consistent with the Legislature's concern for protecting dealers. *See id.*

Hyundai's additional arguments lack merit. In particular, Hyundai's claim that Darling's has no basis for "reimbursement" because Hyundai promptly credited Darling's the full amount for the part and that if Darling's paid nothing for the parts, there is nothing to reimburse must fail because it ignores the fact that Darling's *did* pay for the remanufactured units. The fact that Hyundai promptly reimbursed Darling's for the payment does not change this fact or somehow exempt it from paying Darling's the full amount of the payment due, i.e. the 94% markup.

Finally, Hyundai's attack on the Small Claims Judgment for basing its holding in part on how the vehicle owner would view the warranty repairs, does not change the outcome of this case. While the court agrees section 1176 does not mandate that the transaction be viewed from the perspective of the vehicle's owner, this does not mean section 1176 does not apply to the remanufactured units. As discussed above, the plain language of the statute combined with the fact that there is no meaningful difference between the remanufactured units and "typical" parts, the Law Court's interpretation of section 1176 in *Ford Motor Co. 1998*, and the legislative intent behind the Dealers Act demonstrate that the remanufactured units are subject to section 1176 and that the Small Claims Judgment reached the right result.

9

B.   Whether the District Court's Interpretation of Section 1176
     Impermissibly Abrogates the Parties' Agreement that Hyundai is the
     Exclusive Provider of the Remanufactured Radios

Hyundai argues section 1176 does not bar the parties from agreeing that certain

parts can be provided by the manufacturer instead of the dealer. Indeed, the statute only

requires a manufacturer to reimburse a dealer for parts the dealer is "required" or

"permitted" to "provide" for warranty repair. Hyundai argues, as discussed above, that

the parties agreed Hyundai would provide the remanufactured units, not Darling's. From

this premise, Hyundai cites to case law arguing that absent a clear mandate from the

legislature, the court should not interfere with the private agreement of parties. *See*

*General Motors Corp. v. Darling's*, 444 F.3d 98, 109 (1st Cir. 2006).

Hyundai further argues that if the legislature had intended to require

manufacturers to pay a markup on parts they provide at no charge, it could have done so,

as evidenced by statutes doing precisely that in other jurisdictions. *See* Fla. Stat. §

320.696(3)(c) ("If a licensee furnishes a part or component to a [dealer] at no cost to use

in performing repairs under a…warranty repair, the licensee shall compensate the dealer

for the part or component in the same manner as warranty parts compensation under this

subsection, less the dealer cost for the part"); Va. Code. Ann. § 46.2-1571(5) ("If a

manufacturer… furnishes a part to a dealer at no cost for use by the dealer in performing

work for which the manufacturer…is required to compensate the dealer under this

section, the manufacturer…shall compensate the dealer for the part in the same manner as

warranty parts compensation"). Therefore, Hyundai argues the Small Claims Judgment's

interpretation of section 1176 effectively reads this provision into statute, even though the

10

Legislature has not taken any action to indicate it intended to "interfere with the bargains that have been struck" between manufacturers and dealers.

Hyundai's claim that section 1174 would interfere with Hyundai's contract with Darling's is premised on the notion that Hyundai, not Darling's, provided the remanufactured units under section 1176. As discussed in section II, A, *supra*, however, this argument is without merit. For purposes of section 1176, Darling's "provided" the remanufactured units. Similarly, Hyundai's argument that the Legislature would have explicitly required manufacturers to pay a markup on parts they provided at no charge is based on the premise that Hyundai provided the remanufactured units at no charge. Again as discussed in section II, A, *supra*, Darling's did pay for the remanufactured units in the same manner it paid for all parts used in warranty repairs. The fact that Hyundai promptly reimbursed Darling's for the payment does not change this fact.

In addition, 10 M.R.S.A. § 1178 is clear that Hyundai and Darling's agreement is subject to the provisions of the Dealers Act. 10 M.R.S.A. § 1178 ("Written or oral agreements between a manufacturer...with a motor vehicle dealer including, but not limited to...the franchise agreement...policies and procedure agreements, bulletins or manuals....and all other such agreements in which the manufacturer...has any direct or indirect interest, are subject to this chapter"). In other words, the legislature determined the Dealers Act should modify Hyundai's private agreements with dealers. Hyundai recognizes as much when it stipulated that the average markup is 94% instead of the 40% provided in the Warranty Manual. Finally, it is worth noting that in addition to not being binding in Maine, the Virginia and Florida statutes Hyundai cites *do* require manufacturers to pay a markup to dealers on parts provided at no cost when used in

11

warranty repairs, providing further evidence that the remanufactured units warrant the 94% markup payment.

### C. Whether the District Court's Interpretation of Section 1176 Conflicts with Other Provisions

Hyundai argues that the parts exchange program at issue—wherein remanufactured units are quickly provided to vehicle owners rather than the lengthier process of shipping the defective units to Hyundai, having Hyundai repair them, and then shipping them back to the Dealer—benefits Maine consumers by providing them a replacement part quickly. Indeed, Hyundai notes that the Legislature has given tacit approval of parts exchange program by enacting legislation to facilitate them. In particular, Hyundai cites to 29-a M.R.S.A. § 1803, which provides that Darling's is required "[to] allow a customer to inspect replaced parts and…return replaced parts to the customer on request unless the facility is required to return the parts to the manufacturer…under a bona fide warranty or exchange arrangement." Based on this, Hyundai argues the Small Claims Judgment's interpretation of section 1176 would effectively read parts exchange programs out of law. While Hyundai does not explain how this would read parts exchange programs out of law, it is presumably due to the increased cost of paying the markup on parts exchanged therein.

Here, Hyundai's arguments are again without merit. Nothing in the Small Claims Judgment's interpretation of section 1176 prohibits the use of parts exchange programs as recognized by 29-a M.R.S.A. § 1803. Furthermore, while the Small Claims Judgment's interpretation of section 1176 may make parts exchange programs more expensive for Hyundai—and in turn dealers and customers—this consideration has nothing to do with the proper interpretation of section 1176. Section 1176 requires manufacturers to

reimburse dealers at the retail rate customarily charged—here equivalent to the dealer net price plus 94% markup. The effects this may have on parts exchange programs—which are not part of the Dealers Act— do not alter the court's interpretation of section 1176.

## III.    Conclusion

The District Court did not err in finding that warranty repairs involving the remanufactured units are subject to 10 M.R.S.A. § 1176 and that Hyundai was required to pay Darling's the 94% markup on the remanufactured units. The plain language of section 1176 combined with the lack of a meaningful difference between the remanufactured units and "typical" parts, the Law Court's interpretation of section 1176 in *Ford Motor Co. 1998*, and the legislative intent behind the Dealers Act support this ruling. Furthermore, contrary to Hyundai's contentions, the Small Claims Judgment's interpretation and application of section 1176 did not impermissibly abrogate the parties' agreement or conflict with other statutes such as 29-a M.R.S.A. § 1803. Accordingly, the court denies Hyundai's M.R. Civ. P. 76D appeal.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: January 20, 2015

Michaela Murphy, Justice
Maine Superior Court

13

Date Filed   1/3/14        Kennebec        Docket No. AP-14-01        F
                           County

Action:  Small Claims

# J. Murphy

Darling's Hyundai              vs.        Hyundai Motor America

Plaintiff's Attorney                      Defendant's Attorney

Judy Metcalf, Esq.                        ~~Patrick Strawbridge, Esq.~~ (Withdrawn)
PO Box 9                                  ~~Bingham McCutchen LLP~~
Brunswick, ME  04011-0009                 ~~One Federal Street~~
                                          ~~Boston, MA  02110~~
Brandon Bieglow, Esq.
World Trade Center East                   -Frederick Badger, Jr., Esq
2 Searsport Lane, Suite 300               -Joshua Randlett, Esq
Boston, MA  02210-2028                    PO Box 2429
                                          Bangor, ME  04402-2429

Date of Entry

| | |
|---|---|
| 1/10/14 | Entire file (SC-13-287) transferred from Augusta D.C. on 1/3/14. |
| 1/23/14 | Transcript, filed (1/13/14). Hearing took place on October 2, 2013 with Judge Dobson. |
| 1/23/14 | Notice and Briefing Schedule issued. Copy to Judy Metcalf, Esq., Patrick Strawbridge, Esq. |
| 1/28/14 | Letter re: attorney fee affidavit, filed 1/10/14. s/Metcalf, Esq. |
| 2/21/14 | Defendant-Appellant's Brief, filed.  s/Strawbridge, Esq. |
| 3/25/14 | Plaintiff-Appellee's Brief, filed 3/24/14.  s/Patient, Esq. |
| 4/11/14 | Defendant-Appellant's Reply Brief, filed 4/7/14.  s/Strawbridge, Esq. |
| 6/19/14 | Oral argument scheduled for 7/8/14 at 2:30 p.m. Notice of Hearing sent to Attys Metcalf and Strawbridge. |
| 6/25/14 | Joint Motion to Continue Hearing, filed.  s/Metcalf, Esq.  s/Bigelow, Esq. |
| 6/25/14 | ORDER, Murphy, J. Joint Motion to Continue Hearing is GRANTED.  The hearing scheduled for 7/8/14 will be continued and rescheduled for the next available hearing date at the Court's convenience. |
| 6/25/14 | Oral argument scheduled for 9/3/14 at 2:30 p.m. Notice of Hearing sent to Attys Metcalf and Strawbridge. |

9/3/14      Oral argument held, J. Murphy presiding.  Noreen Patient, Esq., Patrick Strawbridge,
            Esq. and Brandon Bigelow, Esq.
            Tape 1898, Index 2716-3540
            Under advisement.

12/16/14    Entry of Appearance, as counsel for Defendant Hyundai, filed 12/12/14.  s/Badger, Esq.
            s/Randlett, Esq.

12/16/14    Notice of Withdrawal of Counsel, for Defendant Hyundai, filed.  s/Strawbridge, Esq.

1/21/15     ORDER, Murphy, J.  (1/20/15)
            The Court denies Hyundai's M.R.Civ. P. 76D appeal.
            Copy to Attys Metcalf, Bigelow, and Badger.
            Copy to Repositories.

1/22/15     File returned to Augusta D.C.

Action: <u>Small Claims</u>

| Darling's Hyundai | vs. | Hyundai Motor America |
|---|---|---|

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|

Judy Metcalf, Esq.
PO Box 9
Brunswick, ME 04011-0009

~~Patrick Strawbridge, Esq.~~ (Withdrawn)
~~Bingham McCutchen LLP~~
~~One Federal Street~~
~~Boston, MA 02110~~

-Frederick Badger, Jr., Esq.
-Joshua Randlett, Esq.
PO Box 2429
Bangor, ME 04402-2429

## Date of Entry

| | |
|---|---|
| 1/10/14 | Entire file (SC-13-289) transferred from Augusta D.C. on 1/3/14. |
| 1/23/14 | Transcript, filed (1/13/14).<br>Hearing took place on October 2, 2013 with Judge Dobson. |
| 1/28/14 | Notice and Briefing Schedule issued on 1/23/14. Copy to Judy Metcalf, Esq., Patrick Strawbridge, Esq. |
| 1/28/14 | Letter re: attorney fee affidavit, filed 1/10/14. s/Metcalf, Esq. |
| 2/21/14 | Defendant-Appellant's Brief, filed. s/Strawbridge, Esq. |
| 3/25/14 | Plaintiff-Appellee's Brief, filed 3/24/14. s/Patient, Esq. |
| 4/11/14 | Defendant-Appellant's Reply Brief, filed 4/7/14. s/Strawbridge, Esq. |
| 6/19/14 | Oral argument scheduled for 7/8/14 at 2:30 p.m.<br>Notice of Hearing sent to Attys Metcalf and Strawbridge. |
| 6/25/14 | Joint Motion to Continue Hearing, filed. s/Metcalf, Esq. s/Bigelow, Esq. |
| 6/25/14 | ORDER, Murphy, J.<br>Joint Motion to Continue Hearing is GRANTED. The hearing scheduled for 7/8/14 will be continued and rescheduled for the next available hearing date at the Court's convenience. |
| 6/25/14 | Oral argument scheduled for 9/3/14 at 2:30 p.m.<br>Notice of Hearing sent to Attys Metcalf and Strawbridge. |

| 9/3/14 | Oral argument held, J. Murphy presiding.  Noreen Patient, Esq., Patrick Strawbridge, Esq. and Brandon Bigelow, Esq.<br>Tape 1898, Index 2716-3540.<br>Under advisement. |
|---|---|
| 12/16/14 | Entry of Appearance, as counsel for Defendant Hyundai, filed 12/12/14.  s/Badger, Esq.<br>s/Randlett, Esq. |
| 12/16/14 | Notice of Withdrawal of Counsel, for Defendant Hyundai, filed.  s/Strawbridge, Esq. |
| 1/21/15 | ORDER, Murphy, J.  (1/20/15)<br>The Court denies Hyundai's M.R.Civ. P. 76D appeal.<br>Copy to Attys Metcalf, Bigelow, and Badger.<br>Copy to Repositories. |
| 1/22/15 | File returned to Augusta D.C. |

Date Filed    1/3/14          Kennebec          Docket No. AP-14-03        F
                                County
Action:  Small Claims

Darling's Hyundai                 vs.          Hyundai Motor America

_____

Plaintiff's Attorney                         Defendant's Attorney

Judy Metcalf, Esq.                           ~~Patrick Strawbridge, Esq.~~ (Withdrawn)
PO Box 9                          ·          ~~Bingham McCutchen LLP~~
Brunswick, ME  04011-0009                    ~~One Federal Street~~
                                             ~~Boston, MA  02110~~

                                             -Frederick Badger, Jr., Esq.
                                             -Joshua Randlett, Esq.
                                             PO Box 2429
                                             Bangor, ME  04402-2429
Date of Entry

_____

1/10/14      Entire file (SC-13-290) transferred from Augusta D.C. on 1/3/14.

1/23/14      Transcript, filed (1/13/14).
             Hearing took place on October 2, 2013 with Judge Dobson.

1/28/14      Notice and Briefing Schedule issued on 1/23/14.  Copy to Judy Metcalf, Esq.,
             Patrick Strawbridge, Esq.

1/28/14      Letter re: attorney fee affidavit, filed 1/10/14.  s/Metcalf, Esq.

2/21/14      Defendant-Appellant's Brief, filed.  s/Strawbridge, Esq.

3/25/14      Plaintiff-Appellee's Brief, filed 3/24/14.  s/Patient, Esq.

4/11/14      Defendant-Appellant's Reply Brief, filed 4/7/14.  s/Strawbridge, Esq.

6/19/14      Oral argument scheduled for 7/8/14 at 2:30 p.m.
             Notice of Hearing sent to Attys Metcalf and Strawbridge.

6/25/14      Joint Motion to Continue Hearing, filed.  s/Metcalf, Esq.   s/Bigelow, Esq.

6/25/14      ORDER, Murphy, J.
             Joint Motion to Continue Hearing is GRANTED.  The hearing scheduled for 7/8/14 will
             be continued and rescheduled for the next available hearing date at the Court's
             convenience.

6/25/14      Oral argument scheduled for 9/3/14 at 2:30 p.m.
             Notice of Hearing sent to Attys Metcalf and Strawbridge.

9/3/14       Oral argument held, J. Murphy presiding. Noreen Patient, Esq., Patrick Strawbridge,
             Esq. and Brandon Bigelow, Esq.
             Tape 1898, Index 2716-3540
             Under advisement.

12/16/14     Entry of Appearance, as counsel for Defendant Hyundai, filed 12/12/14. s/Badger, Esq.
             s/Randlett, Esq.

12/16/14     Notice of Withdrawal of Counsel, for Defendant Hyundai, filed. s/Strawbridge, Esq.

1/21/15      ORDER, Murphy, J. (1/20/15)
             The Court denies Hyundai's M.R.Civ. P. 76D appeal.
             Copy to Attys Metcalf, Bigelow, and Badger.
             Copy to Repositories.

1/22/15      File returned to Augusta D.C.